# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# EASTERN DIVISION

| | |
|---|---|
| NIYA BUNCH,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>VICTOR VALLEY DOMESTIC VIOLENCE, INC.,<br><br>　　　　Defendant. | Case No. ED CV 19-02027-VBF (DFM)<br><br>ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND |

## I.　BACKGROUND

In October 2019, Niya Bunch ("Plaintiff") filed suit against Victor Valley Domestic Violence, Inc. ("Better Way"), under Title II of the Civil Rights Act of 1964 and the Fair Housing Act. See Dkt. 1 ("Complaint") at 1. The Court granted Plaintiff leave to proceed in forma pauperis. See Dkt. 5.

Plaintiff alleges that she left Colorado with her two daughters to escape a "domestic violence situation" and was staying at Better Way. See Complaint at 19. On October 22, 2017, Coby Ward—who appears to work at Better Way—confiscated Plaintiff's tarot cards, stating that "some people think they are demonic." Id. at 2. Plaintiff alleges that other Better Way residents were allowed to keep their Bibles. See id. at 4.

During her stay at Better Way, Plaintiff wished to maintain her eligibility for Section 8 housing by conducting daily phone and internet searches for

apartments. See id. at 19. In retaliation for Plaintiff's religious beliefs, Ward would not allow Plaintiff to use the telephone past 5 p.m., indirectly affecting Plaintiff's eligibility for Section 8 housing. See id. at 4-5.

On October 24, 2017, Plaintiff chose to leave Better Way because her "72 hour hold" had ended and she had not been allowed to use the phone in a manner that allowed her to maintain her Section 8 housing eligibility. See id. at 3-4. Ward returned Plaintiff's tarot cards to her on that day, and when Plaintiff was not pleased with the condition of her own stored car seat, offered Plaintiff two alternative car seats that were "small" and "dirty." Id. at 3. Plaintiff and her daughters were homeless until August 2019. See id. at 5.

Plaintiff alleges that Better Way receives federal funding. See id. at 2. She asserts claims of unlawful discrimination, harassment, and retaliation in violation of Title II of the Civil Rights Act of 1964 and the Fair Housing Act. See id. Plaintiff does not state what relief she seeks, other than "declaratory equitable relief as well as monetary damages." Id.

## II. STANDARD OF REVIEW

Pursuant to § 1915(e)(2), the Court must dismiss the case at any time if it determines the allegation of poverty is untrue, or if the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against an immune defendant.

The standard for determining whether a plaintiff has failed to state a claim under § 1915(e)(2) is the same as under Rule 12(b)(6), see Watison v. Carter, 688 F.3d 1108, 1112 (9th Cir. 2012), i.e., the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." Id. The court accepts as true all facts alleged in the complaint and draws all reasonable inferences in favor of the plaintiff. See al-Kidd v. Ashcroft, 580 F.3d 949, 956 (9th Cir. 2009).

"In civil rights cases where the plaintiff appears pro se, the court must construe the pleadings liberally and must afford plaintiff the benefit of the doubt." Karim-Panahi v. L.A. Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988). "[B]efore dismissing a pro se civil rights complaint for failure to state a claim, the district court must give the plaintiff a statement of the complaint's deficiencies." Id.

## III. ANALYSIS

### A. Title II of the Civil Rights Act

Title II of the Civil Rights Act of 1964 provides: "All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin." 42 U.S.C. § 2000a(a). The Court assumes for purposes of this screening order that Better Way qualifies as a "place of public accommodation."

A private individual may only obtain injunctive relief under Title II; Title II does not authorize a claim for money damages. See 42 U.S.C. § 2000a–3; see also Wander v. Kaus, 304 F.3d 856, 858 (9th Cir. 2002). Thus, Plaintiff's request for monetary damages under Title II must be dismissed. Furthermore, a plaintiff seeking injunctive relief based on an alleged past wrong must demonstrate a "real and immediate threat of repeated injury." City of Los Angeles v. Lyons, 461 U.S. 95, 101-02 (1983). Because Plaintiff left Better Way in 2017, there is no apparent threat of repeated injury, real and immediate or otherwise. Plaintiff's Title II claim is accordingly subject to dismissal.

Last, it does not appear from the Complaint that Plaintiff has complied with § 2000a-3(c), which requires that Title II plaintiffs give notice to state authorities when a state law prohibits discrimination and the state authority is authorized to grant or seek relief from such discrimination. California has such a law. See Cal. Civ. Code §§ 51 (prohibiting religious discrimination in "all business establishments of every kind whatsoever"), 52 (permitting California Attorney General to enforce violations). Plaintiff does not allege that she filed written notice of Better Way's allegedly discriminatory actions with the appropriate state authority and has not attached any documentation to her Complaint showing that she did so.[1] Under § 2000a-3(c), she may not file suit under § 2000a until thirty days after she files written notice of the alleged discrimination. This requirement is jurisdictional. See Stearnes v. Baur's Opera House, Inc., 3 F.3d 1142, 1144 (7th Cir. 1993). For this additional reason, it appears that Plaintiff's Title II claim may be defective.

**B.** **Fair Housing Act**

"Congress has articulated a policy of providing, within constitutional limits, for fair housing throughout the United States." Intermountain Fair Hous. Council v. Boise Rescue Mission Ministries, 657 F.3d 988, 994 (9th Cir. 2011) (citing 42 U.S.C. § 3601). The Fair Housing Act (the "Act") therefore makes it unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling" because of religion. 42 U.S.C. § 3604(b). The Court assumes for purposes of this order that Better Way is a "dwelling" under the Act,[2] and that Better Way "rents" to occupants.

---

[1] Plaintiff does attach a complaint she submitted to the U.S. Department of Justice. See Complaint at 7-12.

[2] See Cmty. House, Inc. v. City of Boise, 490 F.3d 1041, 1048 n.2 (9th Cir. 2007) ("We have never squarely addressed the issue of whether all

Under 24 C.F.R. § 100.65, prohibited actions under the Fair Housing Act include limiting privileges because of the religion of a tenant. Plaintiff alleges that she was prohibited from using her tarot cards while at Better Way, but she does not explain what religion she practices or how tarot cards are part of her religious practice. Without more, the Court cannot conclude that Better Way discriminated against her on the basis of religion. Furthermore, it appears that the rules limiting Plaintiff's telephone use were "house" rules, not rules applied only to her and not to others who practiced a different religion. It is also unclear what Ward's job at Better Way is and whether Ward had any control over how policies were applied to Plaintiff.

Also, nothing in the Complaint suggests that Ward discriminated against Plaintiff because of her religion. A plaintiff can establish an FHA discrimination claim under a theory of disparate treatment or disparate impact. Gamble v. City of Escondido, 104 F.3d 300, 304 (9th Cir. 1997). Plaintiff relies on a disparate treatment theory. To establish her prima facie claim, therefore, she must show that an "invidious discriminatory purpose was a motivating factor" behind Ward's actions. Ave. 6E Investments, LLC v. City of Yuma, Ariz., 818 F.3d 493, 504 (9th Cir.). Ward confiscated Plaintiff's tarot cards because "some people" thought they were "demonic," played "gospel music" in the car, and called Plaintiff "ungrateful." Complaint at 2-3, 15. The Court cannot, from these actions alone, conclude that Ward acted with an invidious discriminatory purpose.

Plaintiff also appears to allege a retaliation claim under 42 U.S.C. § 3617, which states,

---

temporary shelters fit within the Act's definition of 'dwelling,' see 42 U.S.C. § 3602(b); nevertheless, we decline to do so here.").

> It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title.

42 U.S.C. § 3617. As used in § 3617, the term "interference" has been "broadly applied to reach all practices which have the effect of interfering with the exercise of rights under the federal fair housing laws," including protections against housing discrimination. See United States v. City of Hayward, 36 F.3d 832, 835 (9th Cir. 1994). To establish a prima facie case under this provision, "a plaintiff must show that (1) he engaged in a protected activity; (2) the defendant subjected him to an adverse action; and (3) a causal link exists between the protected activity and the adverse action." Walker v. City of Lakewood, 272 F.3d 1114, 1128 (9th Cir. 2001). As noted above, Plaintiff has not sufficiently explained how she engaged in a protected activity or the causal link between that activity and Ward's actions. Plaintiff's Fair Housing Act claim is accordingly subject to dismissal.

## IV. ORDER

IT IS ORDERED THAT:

1. The Clerk shall send Plaintiff a blank civil rights complaint form and a Notice of Election form.

2. Plaintiff shall do one of the following within twenty-eight (28) days of the date of this Order:

   a. File a Notice of Election indicating that she elects to stand on the allegations of the Complaint, understanding that the Court may then recommend that the District Judge issue an order dismissing the claims identified in this Order with prejudice; or

b. Alternatively, if Plaintiff believes that true additional factual allegations would state a claim, she may file an amended complaint curing the deficiencies identified by the Court in this Order. The amended complaint should bear the docket number assigned to this case, be labeled "First Amended Complaint," and be complete in and of itself without reference to the original Complaint or any other documents (except any documents attached as exhibits). Plaintiff is strongly encouraged to use the blank civil rights complaint form provided by the Court.

3. If Plaintiff fails to either file a Notice of Election or a First Amended Complaint within twenty-eight days, the Court will recommend that this case be dismissed for failure to prosecute.

Date: December 11, 2019

DOUGLAS F. McCORMICK
United States Magistrate Judge